## Case No. 7,614.

### KARRAHOO v. ADAMS.

[1 Dill. 344.] [1]

Circuit Court. D. Kansas. 1870.

INDIANS—CITIZENSHIP—JURISDICTION.

1. An Indian residing within the United States is not a "foreign citizen or subject" within the meaning of section 2, art. 3, of the constitution, and cannot, on the ground that he is a "foreign citizen or subject" maintain a suit in the circuit court of the United States.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

2. As to the effect of the 14th amendment upon the status of the Indians, see note at the end of the opinion.

[Cited in U. S. v. Osborn, 2 Fed. 60.]

[Cited in Harrison v. Hadley, Case No. 6,137: Elk v. Wilkins, 112 U. S. 100, 5 Sup. Ct. 44: Wau-Pe-Man-Qua v. Aldrich, 28 Fed. 498.]

This is an action of ejectment brought by the plaintiff, Mary Karrahoo, in the circuit court of the United States for the district of Kansas. There is no allegation in the petition respecting the residence or citizenship of the defendant. The following are the only averments intended to show jurisdiction in this court: "The plaintiff, Mary Karrahoo, states that she is not a citizen of the United States, but that she is an Indian, a member of the Wyandotte Nation of Indians, and that she has never been made, or consented to become, a citizen of the United States of America." By way of amendment the plaintiff further alleged, "that she is not a citizen of the United States or of any state in the United States, but that she is an Indian, a member of the Wyandotte Nation of Indians, and that she has never been made a citizen of the United States, or of any state; that under the provisions of the treaty made between the Wyandotte Nation of Indians and the United States, concluded the 31st of January, 1855, and ratified by the president of the United States the first day of March, 1855, she did make application to the commissioners appointed under the provisions of said treaty to be exempted from the operation of said treaty, declaring the Wyandotte Indians to be citizens of the United States, and that an Indian agent might be continued to her and her associates, and the assistance and protection of the United States extended to her as such Indian." The treaty thus referred to will be found in 10 Stat. 1159. It may be remarked that there is no statement in the petition that the plaintiff is taxed or taxable. The defendant moved to dismiss the cause out of the court for want of jurisdiction over the same. It was admitted in argument that the defendant was a citizen of the state of Kansas and was to be so considered by the court in disposing of the motion.

Wilson Shannon, for the motion.

Jesse Cooper, contra.

Before DILLON, Circuit Judge, and DELAHAY, District Judge.

DILLON, Circuit Judge. The action is ejectment for a tract of land situate within the limits of the state of Kansas; and there is no allegation in the petition showing that the case is one arising under the constitution, laws, or treaties of the United States. There is no suggestion that this court has jurisdiction by reason of the subject matter or character of the action.

It is also to be observed that there is no claim that the court has jurisdiction because the controversy or suit is one between "citi-

zens of different states," for the plaintiff has, by express averment, declared that she is not a citizen of the United States or of any of the states. No question is therefore presented as to the operation or effect of the recent amendment to the constitution, or the act of congress of April 9, 1866 (14 Stat. 27, § 1), upon Indians who are taxed. The plaintiff is a Wyandotte Indian, residing in this state; and reference is made in the petition to the treaty of that tribe with the United States, made January 31, 1855 (10 Stat. 1159). This treaty, among other things, dissolves the tribal relations of the Wyandotte Indians, and declares them "to be citizens of the United States to all intents and purposes, and entitled to all the rights, privileges, and immunities of such citizens, and subject to the laws of the United States and of the territory of Kansas." But this treaty excepted, in this particular, such Indians as applied to be exempt from its operation, among whom was the plaintiff. Since then, Kansas has been admitted into the Union as a state. The counsel for the plaintiff maintains that the courts of the United States have jurisdiction under that portion of section 2 of article 3 of the constitution, which, inter alia, provides that "the judicial power shall extend * * to controversies between a state or citizens thereof, and foreign states, citizens, or subjects." The claim is that the plaintiff, within the meaning of the clause just quoted, is a foreign citizen or subject.

This is not so. Indian tribes residing within the United States are not foreign states. In the case of Cherokee Nation v. Georgia, 5 Pet. [30 U. S.] 1, 19, the supreme court of the United States held, after mature deliberation, "that an Indian tribe or nation, within the United States, is not a foreign state or nation in the sense of the constitution, and cannot maintain an action in the courts of the United States" on the ground that it is a foreign state. If, as thus held, the tribe is not a foreign state, it necessarily results that the persons composing the tribe are not foreign citizens or subjects. Since the Indians are within the jurisdiction and subject to the laws of the United States, or the different states within which they reside, or both, it is difficult to see on what ground, or with what propriety they can be regarded as foreign citizens or subjects. Mackey v. Cox, 18 How. [59 U. S.] 100, 104, per McLean, J.; Worcester v. Georgia, 6 Pet. [31 U. S.] 515.

Where Indians reside within the limits of a state, the relations which they bear respectively to the state and to the national government are very peculiar, and frequently present difficult and perplexing questions. U. S. v. Yellow Sun [Case No. 16,780], and cases cited; McCracken v. Todd, 1 Kan. 148; Hunt v. State, 4 Kan. 60. But no such questions now arise, and since there is no provision in the judiciary act, or any other act of congress giving to the courts of the United States jurisdiction in civil suits by or against Indians,

we need not consider whether such jurisdiction could be constitutionally conferred by congress as respects Indians not citizens, living within state limits, and with respect to cases not arising under the constitution, laws, or treaties of the United States.

That Indians are not foreign citizens or subjects within the meaning of the constitution, and that the court has no jurisdiction of the present suit, will further appear by reference to the 11th section of the judiciary act [1 Stat. 78], which prescribes the jurisdiction of the circuit court of the United States. This section of the act makes no mention of Indians, and does not use the words, foreign citizens or subjects; but instead thereof, it gives the circuit courts jurisdiction where an alien is a party, showing quite clearly that the framers of this famous statute understood the words of the constitution "foreign citizens or subjects," to mean aliens, and not resident Indians.

Again, it is to be remembered that the circuit court is a court of limited jurisdiction, and can exercise it only in cases in which it is expressly conferred by congress. There is no act of congress which undertakes to confer such jurisdiction in favor of an Indian, not a citizen, but resident within a state and against a citizen of the state.

The motion to dismiss the cause must prevail. Motion sustained.

NOTE. The provisions of the fourteenth amendment are as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States, and of the states wherein they reside. * * Representation shall be apportioned among the several states, according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed."

Mr. Senator Carpenter from the senate judiciary committee, which was instructed to inquire into the effect of this amendment upon Indian tribes and treaties, reported to the senate, December 14, 1870, that the committee was of opinion, "that the Indian tribes within the limits of the United States, and the individual members of such tribes, while they adhere to and form a part of the tribes to which they belong, are not, within the meaning of the fourteenth amendment, subject to the jurisdiction, of the United States; and, therefore, that such Indians have not become citizens of the United States by virtue of that amendment; and if so, it follows that the treaties heretofore made between the United States and the Indian tribes are not annulled by that amendment."

In U. S. v. Shanks, 15 Minn. 369 [Gil. 302], it was held, 1st, that part of the Indian reservation described and provided for in the treaty made with the Chippewa Indians, Feb. 22, 1855 (10 Stat. 1166), which was granted to the chief Hole-in-the-Day, under the exception and stipulation contained in the subsequent treaty of May 7, 1864 (13 Stat. 693), continued to retain its character as an Indian reservation notwithstanding such grant. 2d. Hole-in-the-Day, a chief of the Chippewas with whom the United States had treaty relations, and an Indian of unmixed blood, and residing at the time of his death upon the land so granted to him, was not a citizen of the United States, nor of the state of Minnesota, and though said land lay within the territorial limits of Cass county, which was attached to Morrison county, the

probate court of the latter county possessed no jurisdiction over his estate.

Criminal jurisdiction of federal courts over Indians: U. S. v. Yellow Sun [Case No. 16,780]; operation of internal revenue laws in the Indian country: U. S. v. Tobacco Factory [Id. 16,528]; Id., 11 Wall. [78 U. S.] 616. Civil jurisdiction of state courts: Ex parte Forbes [Case No. 4,921]. Circuit courts have no jurisdiction except such as is expressly conferred by congress. —Cited, Harrison v. Hadley [Case No. 6,137].